**In re Barbara J. GRASSO, Debtor.**

**No. 00–10131–RGM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Sept. 14, 2001.

Alan S. Toppelberg, Washington, DC, for creditors, Leslie and Donna Millman.

## MEMORANDUM OPINION

ROBERT G. MAYER, Bankruptcy Judge.

THIS CASE was before the court on September 10, 2001, on the motion of the United States Trustee to convert or dismiss this case and for a post-confirmation status hearing. The motion was originally filed on January 11, 2001. The debtor filed an opposition on February 1, 2001. Frank Bove of the United States Trustee's Office was present as was Leslie Millman and his attorney, Alan S. Toppelberg. Barbara J. Grasso did not appear. Ms. Grasso did file a document entitled "Answer to September 10, 2001 Status Hearing" on September 7, 2001. While this was filed on September 7, 2001, it had not been filed with the court papers prior to hearing. The court, in reviewing Ms. Grasso's response, has reconsidered its oral ruling on September 10, 2001, and in the process of reconsideration has fully considered Ms. Grasso's September 7, 2001 answer.

Ms. Grasso filed the petition in this case on January 13, 2000. Her principal assets were her farm in Fauquier County and her Burmese Mountain dogs which she breeds. The principal creditor activity was by Leslie and Donna Millman. Mr. and Mrs. Millman and Ms. Grasso were at one time friends. They are all Burmese Mountain dog enthusiasts. There are three dogs that both Ms. Grasso and Ms. Millman have a joint interest. They have been the source of substantial controversy in this court and in the state court.

The court confirmed Ms. Grasso's chapter 11 plan on February 26, 2001. The debtor's second amended plan of reorganization as modified and confirmed by the court provided that the balance of her farm, after the sale of an 10–acre parcel, would be sold at foreclosure. A joint ownership of a Burmese Mountain dog with Diana Jaeger was resolved by transferring full ownership and possession of the dog to the debtor. All administrative claims, including the United States Trustee's for quarterly fees were to be paid as they

became due. Claims not exceeding $1,000.00 were to be paid in full. One-half of the allowed claims were to be paid within six months after the effective date of the plan with the balance within 12 months after the effective date of the plan. All other claims, except the two mortgage deficiency claims, were to be paid 65 percent of the allowed claims. The payments were to be made in semi-annual installments commencing six months after the effective date of the plan. The semi-annual installments were to be $5,633.50 and be shared pro-rata among all creditors of the class. The two deficiency claims were to be paid 18 percent of their allowed claims in semi-annual installments commencing six months after the effective date of the plan. The first two installments were to be $566.50 each with subsequent installments increasing, ultimately to $4,750.00. The sale of the 10–acre parcel was accomplished prior to the confirmation of the plan by separate motion.

Ms. Grasso was successful in selling a 10–acre parcel of land from her farm for which she received $20,000.00. She moved to New York where she is presently residing and leased a farm which is suitable for her activities as a dog breeder. She also paid the United State Trustee's fee for the first quarter of 2001 in May, 2001, after confirmation of this plan.

Since confirmation, Ms. Grasso objected to various proofs of claims. All of the objections have been adjudicated. Ms. Grasso's counsel filed an application for compensation which has been approved. There are no motions, adversary proceedings or appeals pending. There are no other actions necessary in this case except completion of the payments under the confirmed chapter 11 plan.

There is litigation pending in state court between the Millmans and Ms. Grasso over their ownership interests in three Burmese Mountain dogs.[1] Ms. Grasso fully participated in that litigation until recently. That litigation has reached the point where the circuit court has ordered the sale of the dogs. Ms. Millman's attorney, Alan S. Toppelberg, has been appointed special commissioner of sale. The proceeds from the sale, after any costs and expenses, will be divided between the parties in accordance with any order entered by the circuit court. Consequently, there does not appear to be any significant activity left with respect to disposition of the ownership of the three dogs in which the Millmans and Ms. Grasso have a joint interest.

The debtor, in her answer with respect to the status hearing, raises various issues. The debtor suggests that her chapter 11 plan was set up for failure. Answer ¶ 6(H)(2). In support of this, she cites various matters which were before the court prior to confirmation. All these matters were considered previously by the court as were her circumstances at the time of confirmation. None is new.

The debtor also complains about the court's ruling denying her motion to transfer this case to New York, various discovery matters, and Mr. Millman's attorney. She concludes by requesting the court to dismiss the chapter 11 proceeding so that she can "wait the required time to file Chapter 11 bankruptcy in the proper district in New York". Answer ¶ 7.[2] These matters have also been previously considered and in at least one case affirmed on appeal. They present nothing new.

---

**1.** Relief from the automatic stay was granted to enable the parties to resolve their contractual matters and to seek partition of the dogs in state court.

**2.** Her February 1, 2001, response to the motion to convert or dismiss objected to conversion or dismissal. That was before her plan was confirmed later that month.

The court is frequently faced with similar motions by the United States Trustee in other chapter 11 cases. A chapter 11 plan is confirmed. Some activity is undertaken, but after several months, the debtor appears not to want to or be able to proceed further. Typically, the United States Trustee files a motion to convert or dismiss the proceeding. The options at that time are to convert the proceeding to chapter 7, dismiss the case, or enter a final decree.

█ The Millmans strenuously argue that the case should be converted to a proceeding under chapter 7. They believe that if it is converted, a chapter 7 trustee would be appointed who would be able to resolve the issue of the jointly owned dogs. They would make an offer to the chapter 7 trustee to purchase the debtor's interest in the dogs. The dogs are in the possession of Mr. and Mrs. Millman. Mr. Toppelberg, counsel for Mr. and Mrs. Millman, also wants the case converted to a proceeding under chapter 7 because he claims that Ms. Grasso has threatened to sue him. He stated that he would like an opportunity to propose a settlement to a chapter 7 trustee. While he strenuously denies any liability, he argues that it is cheaper to pay the chapter 7 trustee a nominal amount to protect himself from vindictive law suits that could be brought in New York or other courts far from Virginia.

█ A conversion to chapter 7 is not appealing in this case. The purposes that the Millmans and Mr. Toppelberg have put forward are not sufficient. While they would provide a convenient way for them to vindicate their interests, the court must consider the interests of all creditors. If the case were converted to chap-

ter 7, the creditors whose claims have been litigated and approved would probably receive no significant distribution from the estate. It is also likely that the debtor would be granted a discharge and the debts due to these creditors would be discharged. While Mr. and Mrs. Millman would receive a benefit from the conversion if the trustee accepted their proposal, as would Mr. Toppelberg, the other creditors would not. For example, there is a deficiency claim in favor of the debtor's former mortgage company of $72,208.04. This amount was litigated and is the subject of an order entered by the court on June 15, 2001. This creditor and other unsecured creditors would be disadvantaged by a conversion to a chapter 7 because of the insufficient assets to make any meaningful distribution to them from the current assets of the debtor and the discharge that would probably be granted to the debtor. As matters stand, they are entitled to a distribution under the chapter 11 plan and Ms. Grasso cannot obtain a second discharge under chapter 11 or a discharge under chapter 7 for six years.[3] In reviewing the interests of all the creditors, it does not appear that it is in their best interests to convert his proceeding to a proceeding under chapter 7, particularly, in light of Ms. Grasso's expressed intention to re-file chapter 11 in New York.

█ A second common disposition of cases in this posture is to dismiss the case. This essentially puts the parties back to where they were prior to the filing of the chapter 11 case. The difficulty with this approach in this particular case is that Ms. Grasso has disposed of her Virginia real estate and has moved to New York. Her principal creditors are in Virginia. It would be burdensome for them to be

**3.** This does not preclude Ms. Grasso from obtaining a chapter 13 discharge in the ap-

propriate circumstances.

hauled into bankruptcy court in New York to vindicate their rights when Ms. Grasso re-files there. While Ms. Grasso complains in her answer that she was burdened by moving to New York, that was a decision she voluntarily made herself during the course of this case. The creditors have not made a similar voluntary choice. Moreover, a dismissal of the case may place in jeopardy rights that have accrued to parties by virtue of the reorganization proceeding. Dismissal may unravel various actions already taken. Particularly in this case where Ms. Grasso has achieved confirmation and all claims have been adjudicated, no benefit accrues to the creditors from dismissal of the case. Dismissal would, in fact, permit Ms. Grasso to re-file a second chapter 11 case as is her stated intention. To restart the process after having achieved confirmation is not appropriate in these circumstances.[4]

■ The remaining option is to issue a final decree and close this case. There are drawbacks to this procedure. Normally, a final report is prepared and filed by the chapter 11 debtor which reflects the debtor's actions in the case. Upon approval of the final report, the final decree is entered. The final decree is not normally entered until all United States Trustee's fees are paid. In this case, sanctions have been issued against Ms. Grasso. A final decree could be withheld to enforce the payment of the fees and sanctions.[5] On the other hand, the court is well aware of the actions that have transpired, the properties that have been sold, and presumes that the debtor has not made substantial payments

to the creditors under her confirmed plan. The plan does provide a remedy in the event of a post-petition default, that is, to file suit in state court for the amounts due under the plan. Those suits can be filed in whichever state court has jurisdiction, which in the case of the Virginia creditors may well be in Virginia. Inasmuch as there are no assets in Virginia, enforcement would probably be necessary in another state.

■ Federal Rule of Bankruptcy Procedure 3022 permits the court to enter a final decree on its motion or on the motion of a party in interest. The Advisory Committee Note to the 1991 amendment states in part as follows:

> Entry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed. Factors that the court should consider in determining whether the estate has been fully administered include (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.

---

**4.** In appropriate circumstances, Ms. Grasso can still file a new petition under chapter 13. If there is a new filing, chapter 13 is preferable because of the presence of the chapter 13 trustee who may more closely supervise and enforce her obligations. However, in light of her multiple filings, further relief may be unavailable without regard to whether this case

is dismissed or a final decree entered. See footnote 6, below.

**5.** The sanctions were entered in favor of Mr. and Mrs. Millman for discovery abuses. They total less than $1,000.00, and may, as the United States Trustee's fee may, be enforced by execution after the case is closed.

In this case, the elements for entering the final decree have been made. The confirmation order is final. No deposits were required to be met. Property of the debtor that was anticipated to be sold has been sold. In particular, the debtor sold a parcel of land from her farm. The balance of the farm was sold at foreclosure, as anticipated. The fourth criteria has also been met. The debtor has assumed her business and the management of her property dealt with by the plan. The fifth element has also been satisfied. Payments under the plan have been commenced. At least one payment was made, this to the United States Trustee for first quarter fees. The first quarter included a portion of time prior to confirmation and a portion of time after confirmation. This obligation has been paid. It may well be that other payments have been made since February, although the record does not document them. The sixth element has also been satisfied. All motions, contested matters and adversary proceedings have been finally resolved. While these conditions are not ideal for entering a final decree, taking into account the relationship of the debtor to the creditors involved, the availability of state remedies, and the advanced stage of the Millman suit in state court, it appears that entering a final decree is the best of three poor alternatives available to the court. All litigation must come to an end sometime and in some manner.[6]

---

**6.** The court notes that Barbara J. Grasso has filed bankruptcy in this court on three prior occasions. The first bankruptcy was filed on May 13, 1999, case number 99–12538–SSM. It was a chapter 13 proceeding. That case was dismissed on June 4, 1999, because the debtor failed to file schedules and a plan. The second case was filed on July 23, 1999, case number 99–13798–RGM. This was also a chapter 13 case. The debtor requested voluntary dismissal on August 27, 1999. The order dismissing the case was entered September 3, 1999. The debtor had a right to dismissal pursuant to § 1307(b). The debtor's third chapter 13 case was filed on October 28, 1999, case number 99–15350–SSM. This case was dismissed on November 22, 1999, on the debtor's request, again pursuant to § 1307(b). In both the second and the third cases, the debtor requested an extension of time within which to file her chapter 13 lists, schedules and chapter 13 plan. The docket does not reflect that they were filed in either case. This case is the fourth petition filed by the debtor. It was filed pursuant to chapter 11 on January 13, 2000.